## ANDREW P. VALENTINE *et al. versus* The City of BOSTON.

The owner of land abutting on a street in the city of Boston laid out as a *town way,* (in contradistinction to a *highway* or *county road,*) set his building back from the line of the street, thus leaving an open strip of land, which was used by the public as a part of the street for more than forty years. It was *held,* that the public or the city had acquired a right of way over this strip, so that upon a new street being laid out over it by the city, the owner of the soil was not entitled to damages.

Upon a claim for damages in such case, the owner of the soil requested the judge to instruct the jury, that a *town way* could not be acquired or established in any other manner than by laying it out for that purpose by virtue of the statute ; but the judge, (without pointing out the distinction between a town way and a highway,) instructed them, that a way might be acquired by dedication or user, and that twenty years' use of the land as a way, would raise a presumption that it had been dedicated by the owner to the public for a way, and that forty years' use would give the public a right of way over it as effectually as if laid out for a way agreeably to the statute. It was *held,* that these instructions were in themselves correct, and all that the case required.

THIS was a petition to the Court of Common Pleas for a jury to estimate the damage for 1846 feet of land taken by the mayor and aldermen of the city of Boston for a street, called Broad street. An issue was joined, and upon the trial before the jury, *Ward* C. J. presiding, it was admitted that the city had taken 1472 feet of the petitioners' land, but it was denied that the remaining 374 feet had been taken from them, because it was alleged that the city had a right of way over this part before and at the time of taking it for Broad street.

The petitioners produced a record of the town of Boston, by which it appeared, that on the 31st of October, 1683, the selectmen staked out a " highway " (Sea street) " for the town's use, on the easterly side of the proprietors' land &c. which way is in breadth from the proprietors' land fifty foot towards the seashore. The flats and land between the said highway into the sea, is granted to the proprietors of the land which are abutters on the said way, in equal proportion to their several fronts on said way, always provided the said proprietors and abutters maintain in good repair the said way at their proper cost and charge."

Also a record of a vote of the town, in 1736, accepting the report of the selectmen, " that the ancient highway, which was to be maintained in good repair, of fifty foot in breadth, be

now reduced to the breadth of thirty-five foot, which we ap-
prehend will well accommodate the inhabitants and sufficiently
answer all the ends of a street, and therefore that the said street
be fixed and established by the town to be thirty-five foot in
breadth, and that the same be maintained and kept in good re-
pair, open, free and unincumbered, at the proper cost and
charge of the proprietors and abutters on said street, for the
use of the town of Boston forever."

The easterly side of Sea street, as reduced to thirty-five
feet in breadth, and the southwesterly side of Summer street,
intersect each other at an acute angle, and the land in ques-
tion is a triangular piece between those lines at the point of in-
tersection. It is ten feet wide on Summer street, and runs
to a point on Sea street, and is included in the fifteen feet cut
off from Sea street in 1736.

Nearly a century ago the former owners of the petitioners'
land set their buildings back ten feet from the intersection of
the two streets, thus leaving the triangular parcel open to the
public use.

The petitioners contended that the reduction of Sea street
from fifty to thirty-five feet, was such an alteration of the street
as operated a discontinuance of it over the fifteen feet, and
that the parcel in question could not be reëstablished as a way
unless laid out anew, agreeably to the statute, and therefore the
land belonged to the petitioners, who were abutters upon both
sides of the way.

The respondents, on the contrary, contended that under the
votes of the town the petitioners were only entitled to the flats
below the original fifty feet street, and that upon the reduction
of the width the portion thus discontinued reverted to the
town.

The petitioners requested the judge to instruct the jury, in
matter of law, as above contended by them, and likewise that
a *town way* could not be acquired by dedication, or established
in any other manner than by laying it out for that purpose, by
virtue of the statute.

But the judge instructed the jury, that a way might be ac-
quired by dedication or user, and that twenty years' use of the
land as a way, would raise a presumption that it had been ded-

cated by the owner to the public, for a way, and that forty years' use of the land as a way, would give the public a right of way over it as effectually as if laid out for a way agreeably to the statute.

To this instruction the petitioners filed exceptions.

The case was argued in writing.

*Osgood,* in support of the exceptions. Sea street was originally laid out by the selectmen as a *town way,* technically so called. Upon the discontinuance of a part of it in 1736, the land now in controversy belonged, unincumbered by the way, to the petitioners' ancestors, who owned the soil under and on both sides of the street.

A town way, technically so called, cannot be acquired by dedication, nor established in any other manner than by laying it out agreeably to the statute. *Commonwealth* v. *Low,* 3 Pick. 413 ; *Commonwealth* v. *Newbury,* 2 Pick. 57 ; *Hinckley* v. *Hastings,* 2 Pick. 162 ; [see 2d edit. Perkins's note.] The jury however were instructed, that a way might be acquired by dedication or user, the judge omitting to point out the distinction in this respect between a private town way " for the town's use," and a public highway, thereby leading them to suppose that there was no such distinction. However true the instruction may be, when applied to public highways, that twenty years' use of land as a way would raise the presumption of a dedication to the public, and that forty years' use would give the public a right of way over it as effectually as if laid out for a way agreeably to the statute, it is not correct when applied to a private town way ; which Sea street unquestionably was.

The presumption of a grant or dedication of the land to the town for a way, is negatived by the records of the town ; which show the origin, nature and extent of the way belonging to the town.

*J. Pickering,* City Solicitor, *contrà.* The respondents do not admit that Sea street was originally laid out as a town way, technically so called. In the record the language is, that the selectmen staked out a " highway."

The principal question is whether the instruction to the jury was correct. If, as the respondents insist, the fifteen feet dis-

continued reverted to the town, the original owner, then ˙; question arises on this point. If, on the other hand, the lanι in question belonged to the abutters on the street, in consequence of the discontinuance of the way over that part, the respondents say that the principle of dedication is now adopted by this Court. *Hobbs* v. *Lowell,* decided in Middlesex, in 1837.

But the petitioners maintain that the case just cited does not apply to *town ways,* but only to *highways.* It is difficult to perceive why both classes of ways must not fall within the principle there adopted. The statutes requiring that *highways* shall be laid out with certain formalities, are just as explicit and as effectually exclude all other modes of acquiring such public rights of way, as the statutes regulating the laying out of *town ways.*

It is objected that there can be no presumption of a grant or dedication, because of the records referred to. But notwithstanding the records, it must be admitted that such a presumption might lie, if a *highway* were in question. And further, though no record is produced, yet a record may be presumed in many cases, as well as a grant.

*Osgood,* in reply, said that a record cannot be presumed in a case where there is a record in existence, upon the identical subject matter, directly the reverse of what the presumed record ought or must be supposed to contain. *Atkins* v. *Bord man,* 20 Pick. 302.

MORTON J. delivered the opinion of the Court. The mayor and aldermen laid out a highway called Broad street, diagonally across the petitioners' land, for which they now seek a remuneration. The only question in the case relates to the amount of damages ; which depends on the quantity of land taken. Broad street terminates at Sea street upon the petitioners' land, and the quantity taken will depend upon the boundary of the latter street.

This is an ancient street, which has been used as such for more than a century. There is no question but the boundaries of it are well defined and clearly ascertained, according to such public use. But if any uncertainty did exist as to the line of the street, the mere lapse of time would define it by the buildings, as they stood at the laying out of Broad street. *St.* 1786, *c.* 67, § 7 ; Revised St. *c.* 24, § 61.

But it has been argued for the petitioners, that Sea street *Valentine* has been laid out according to law ; that the lines of it are *Boston.* clearly ascertainable by the record, and that these lines leave to the petitioners a narrow strip of land in front of their building, containing 374 feet.

It appears that Sea street was laid out by the town in 1683. It was at first fifty feet wide ; but in 1736 the town voted to reduce the width to thirty-five feet. There can be no doubt that the street was originally laid out as a *town way*. It was done by the selectmen, who, at that time, had the power to lay out town-ways, without the approbation of the town. Anc. Charters, &c. 127, 269. Nor can there be any doubt that the acts of the selectmen and the votes of the town, in reducing the width of the street, operated as a discontinuance of so much of it as was excluded by the reduction of the width. Anc. Charters, &c. 459 ; *Commonwealth* v. *Inhabitants of Westborough*, 3 Mass. R. 406.

In this state of things the owners of the petitioners' estate, which was then in the corner formed by the oblique intersection of Sea street and Summer street, to render less acute the angle thus formed and with a view to improve their own estate or to accommodate the public, or both, placed their buildings ten feet back from the angle, making Sea street at this point forty-five instead of thirty-five feet wide, and thus leaving open for public use the little triangle now in controversy. In this situation the street remained for almost a century. After this lapse of time, and after so long a user of this land by the public, the respondents contend that they have a right to continue to use it without making compensation for it. These facts, they argue, are abundant evidence of an easement in the city or in the public.

To this it is objected, that the street in question appears from the records to be a legal town way, established according to the provisions of the statutes, and that a town way cannot be created or acquired by dedication, user or a presumption of a grant, so that no additional width can be, by any means, acquired to such a way.

In *Commonwealth* v. *Newbury*, 2 Pick. 54, and *Commonwealth* v. *Low*, 3 Pick. 408, it seems to be holden that a town

way, as such, and with its statutory properties and qualities, can be acquired only in the method specially pointed out in the statute. And these positions we have now no occasion to call in question. Because if this strip of land may not be deemed a part of a town way, it does not necessarily follow that the public or the city may not have an easement in it of some other character. When those decisions were made, the doctrine of dedication had not been recognized as the law of this State. *Hinckley* v. *Hastings*, 2 Pick. 162. Since that time it has been fully adopted, in the case of *Hobbs* v. *Inhabitants of Lowell.* So in *Commonwealth* v. *Low*, it is said a town " may become seised of a right of way by grant, prescription or reservation. A grant also may be presumed from continued occupation, as well in favor of a corporation as of an individual." 3 Pick. 413. Now from the uninterrupted public use of this land for a century, we can entertain no doubt that an easement was established in it. And whether it may have been acquired by a grant, or dedication, or the presumption of a laying out, and whether it may be viewed as a private way for the town or as a highway for the public, seem to us to be useless speculations ; for in either event the owners held it subject to a servitude, and the public or the city had acquired an easement over it.

Although the mode of establishing town-ways and county roads may be very dissimilar, yet as to the public there is very little difference between them. They are both highways, and alike open to all the citizens of the Commonwealth. The towns within whose territorial limits they lie are equally bound to keep both in repair and equally liable, *civiliter* and *criminaliter*, for the neglect to perform this duty. However wise the distinction between them might have been in the early settlement of the country, there seems to be very little utility in the further continuance of it. The difference between the two seems to be wholly abolished in the city of Boston. Every street laid out by the mayor and aldermen is now a public highway. Revised Stat. *c*. 24, § 54.

On the whole we are satisfied with the instructions of the learned Chief Justice of the Common Pleas, which were excepted to. It was unnecessary to give the instruction requested

in relation to *town-ways*. And the general directions, " that a way might be acquired by dedication or user, that twenty years' use of land as a way would raise a presumption that it had been dedicated by the owner to the public for a way, and that forty years' use of the land as a way would give the public a right of way over it," are in themselves correct and all that the case required.

*Exceptions overruled and judgment of the Common Pleas affirmed.*